526 So.2d 479 (1988)
James BEAUHALL and Sentry Insurance Company a Mutual Company, et al.
v.
SEARS, ROEBUCK & COMPANY, et al.
No. CA 87 0548.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
Rehearing Denied June 24, 1988.
*480 Hampden White, Baton Rouge, for plaintiff-appellee James Beauhall and Sentry Ins. a Mut. Co.
Sammuel Cicero, Baton Rouge, for defendant-appellee City of Baton Rouge and Parish of East Baton Rouge.
Donna Schwab, Baton Rouge, for defendant-appellant Sears Roebuck & Co. and State Industries, Inc.
Robert Vandaworker, Baton Rouge, for defendant-appellee Don's Plumbing Co., Inc., Don's Plumbing Co. and Latil & Son, Inc.
Don Latil, Don's Plumbing Co., Inc., in pro. per.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.

PROCEEDINGS IN THE LOWER COURT
This is a suit for damages caused by the leaking of a hot water heater purchased by the plaintiff, James Beauhall from Sears, Roebuck & Company (Sears). Suit was filed by Beauhall and his homeowner's insurance carrier, Sentry Insurance A Mutual Company (Sentry), against Sears; State Industries, Inc. (State Industries); Don's Plumbing Co., Inc. and Don's Plumbing Company (Don's); Latil and Son, Inc. (Latil's); and the City of Baton Rouge and the Parish of East Baton Rouge (City/Parish). Sears third partied Don's, Latil's and the City/Parish. State Industries third partied the City/Parish.
The matter was tried by a jury as to all of the defendants except the City/Parish. The jury brought back special verdicts finding negligence on the part of State Industries, Sears, Latil's and the City/Parish, although the trial judge was trying the case against the City/Parish. The jury found no negligence on the part of Don's. James Beauhall was also found to have contributed to his own damage. All claims *481 based on strict liability were rejected. The jury further assessed the degree of fault of State Industries at 10%, Sears at 10%, Latil at 35% and the City/Parish at 35%. Beauhall's contributory negligence was fixed at 10%. Without taking into consideration the percentages of fault the jury awarded Beauhall damages of $11,480 and awarded no damages to Sentry.
The trial judge originally signed a judgment in accordance with the jury's verdict reducing Beauhall's damages by 10% to $10,332, but rejecting claims against the City/Parish. Consequently, Sears' third party demand was recognized only against Latil.
Subsequent to the filing of motions for a judgment n.o.v. or a new trial by plaintiffs and all defendants cast in judgment except State Industries and Latil, and for an additur by Sentry and Beauhall, the trial court signed an amended judgment granting Beauhall the same $10,332, but also granting Sentry $100,438.70. In accordance with the jury's verdict the new judgment fixed negligence on the part of Sears at 10%, State Industries at 10%, Latil's at 35% and recognized 10% negligence on the part of Beauhall. The plaintiff's suit against the City/Parish was dismissed. The third party demands of the defendants cast in judgment were recognized, but were dismissed as to the City/Parish and Don's.
Sears and State Industries appeal the judgment against them and the dismissal of their third party demands against the City/Parish. No one questions the judgment dismissing Don's, and Latil's did not appeal, making the judgment against it final. Plaintiffs' complain in brief of the dismissal of the suit against the City/Parish and alternatively that the 35% attributed to the City/Parish by the jury was not reapportioned among the other defendants by the trial court when the City/Parish was dismissed. However, plaintiffs did not appeal the judgment of the trial court nor did they answer the defendants' appeal. Consequently, the judgment dismissing the plaintiffs' suit against the City/Parish is final, and the assessment of negligence amounting to only 65% is also final. La.C. C.P. art. 2133.
The resulting issues are whether Sears and State Industries are liable to the plaintiffs under the evidence presented and if so whether they are entitled to contribution from the City/Parish. Additionally, Sears urges that reversible error was committed by the trial judge in failing to properly recharge the jury and in awarding damages both to Beauhall and Sentry for which there is no proof.

FACTS
Beauhall acquired a large three story house in 1976. There was a 100 gallon hot water heater located on the third floor. In March of 1980, this water heater leaked. Beauhall ordered a new 40 gallon hot water heater from Sears. He arranged with Latil to install the new hot water heater. The new installation was given final approval by the City/Parish on June 16, 1980. On November 21, 1981, the new hot water heater leaked causing the damage which resulted in this suit.

NEGLIGENCE OF SEARS AND STATE INDUSTRIES
The evidence indicates State Industries is the actual manufacturer of the hot water heater. However, no one seriously questions that since Sears holds itself out to be the manufacturer of the product, it is the constructive manufacturer and consequently owes the same duty as the manufacturer. Toups v. Sears, Roebuck & Co., 507 So.2d 809, 818, 819 (La.1987); Chappuis v. Sears Roebuck and Co., 358 So.2d 926 (La.1978). No design or manufacturing defect is alleged or proved in the manufacture of the hot water heater. However, it is urged that under the circumstances surrounding the installation of the hot water heater there was a duty to warn as to the danger in this particular installation.
Both parties rely primarily on the testimony of Harold Myers, a consulting engineer called by the plaintiffs who testified as to the installation of the hot water heater and the cause of the leak. Myers testified that he made his inspection on November *482 25, 1981. He located the hot water heater in the attic of the three story residence. He observed holes in the flue passage, which is the small tube that passes through the center of the hot water heater, and determined that the water leak occurred through those holes. He found the holes were caused by the venting or exhaust system. The vent pipe connects to the top of the hot water heater. When the vent pipe came off the top of the hot water heater it went down for some distance before turning up to go out through the roof. Additionally, it contained three 90 degree elbows. Properly installed the vent pipes should go directly up through the roof. Otherwise, the products of combustion are not vented away. They in turn condense on the heater parts causing corrosion which results in a rupture in the line.
Plaintiffs concede that the venting was part of the installation and it was not done by Sears or State Industries. Consequently, Sears and State are not responsible for the venting installation.
Myers further testified that the corrosion problem from venting was exacerbated by the fact that the 40 gallon unit was connected into the same system that was previously served by a 100 gallon tank. That system consisted of uninsulated copper pipe throughout with a circulating pump so that water continuously circulated through the pipes even when not being used. This was to keep from having to wait for hot water to come all the way from the tank when a faucet was turned on. However, the water circulating through the pipes constantly lost heat which caused the heater to burn excessively. This, thus increased the amount of corrosion being built up as a result of the improper venting.
It is plaintiffs' basic contention that the liability of Sears and State Industries is based on a duty to warn against this type of installation. They further contend that the failure to warn supports the jury's finding of negligence on the part of Sears and State Industries.
A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user.... In the context of the manufacturer's duty to warn of the dangers in the use of a product, the manufacturer is obligated to anticipate the environment in which the product will be used and to give notice of the potential risks arising from foreseeable use in the foreseeable environment.
Bloxom v. Bloxom, 512 So.2d 839, 843 (La. 1987) (citations omitted). Without question the cause of the leak in the tank was the fault of the vent system coupled with installation of a 40 gallon tank on a recirculating system constructed with copper tubing. It seems apparent that the user of a hot water heater might want to install it on a recirculating system simply to avoid a time lag in receiving hot water from a faucet. Since the tank is designed to be used to furnish hot water this is a normal use of the product. However, use of the product in that fashion poses a danger. The vice president of product development and research for State Industries testified that the 40 gallon tank is not intended for use with a constantly circulating pump. Yet the owner's manual provided no warning or even guidance as to use of a circulating pump or as to the type or size of piping to which the tank should be attached.
State Industries relies on the warning given on the water heater:
WARNING FOR YOUR SAFETY

. . . . .
This water heater, as all water heaters, will eventually leak. Do not install without adequate drainage provisions where water flow will cause damage. See installation instructions.
This warning may be sufficient for ordinary leakage. However, it does not warn at all against the use of a recirculating system. It specifies no danger and simply leads the consumer to believe that the heater will probably leak when it has worn out in the course of time. With this warning a consumer might well take the precaution of replacing an old heater if it is located where it might cause damage. It gives no *483 warning that a new tank might leak if installed as was the tank here and consequently, does not cover the danger involved in installation with a recirculating system.
The failure to warn breached a duty owed by the manufacturer in this case. The jury's finding of negligence is consequently not clearly wrong.

LIABILITY OF CITY/PARISH FOR CONTRIBUTION
The evidence is that Kenneth Karr made the final inspection of the installation for the City. Both Karr and the Chief Plumbing Inspector for the City/Parish at the time, Mr. William Dean, testified that under the applicable code the "vent connector shall be installed without any dips or sags and shall slope upward at least one-quarter per inch per foot." According to Mr. Karr the installation met this specification at the final two of the 90 degree adjustable elbows in the vent installation, and when questioned about the third, Dean testified this was an acceptable installation. Given an acceptable installation with three 90 degree adjustable elbows making a movement in the slope of the vent quite easy, and the testimony of Karr that the vent was properly sloped when he inspected it, we cannot say that the trial court's acceptance of Karr's testimony as to the correctness of the vent slope when he issued the final permit is manifestly erroneous. Consequently, we find no error in the dismissal of the third party demands against the City/Parish.

VALIDITY OF RECHARGE OF THE JURY
After the jury had deliberated for over three hours the formean requested that the court "explain to us more what is under consideration in the standard of negligence." The court then gave the jury the general law on negligence. Sears alleges that it was prejudiced by the trial court not also charging the jury again on the defenses to negligence, particularly with respect to the responsibilities of Beauhall who Sears claims was not held to a sufficient degree of negligence. We have reviewed the record and find that the jury's award of 10 percent negligence on the part of Beauhall is supported by the record. Consequently, we cannot say that any prejudice resulted from the trial court not instructing on the defenses to negligence, especially in view of the request of the jury for a charge on the standard of negligence.
This assignment of error is without merit.

AMOUNT OF DAMAGES TO SENTRY AND BEAUHALL
a) Beauhall's Damages
Beauhall's policy with Sentry carried a $1000 deductible. It is uncontroverted that Beauhall is entitled to that amount reduced by 10 per cent.
Beauhall claims additional damages for loss of rental of his home for special events during the time the damages were being repaired and for amounts he paid to repair his home over and above those allowed by Sentry. Beauhall contracted with Carl Zuetzschel for the repair work. Sentry based its payment to Beauhall on Zuetzschel's estimate. It is uncontroverted that Zuetzschel underestimated the cost of replacing certain items and Sentry paid based on that estimate. Beauhall made up the difference. He testified Zuetzschel estimated replacing the wallpaper at $10 per roll when he actually had to spend $65 per roll for a proper replacement. Additionally, Beauhall testified he spent eight to nine thousand dollars more on replacing the drapes than had been estimated by Zuetzschel. Given these additional amounts for just the drapes and wallpaper we cannot say the jury was manifestly erroneous in awarding Beauhall $11,480.
This assignment is without merit.
b) Sentry
The adjuster for Sentry testified that the amount of the loss estimated by Sentry contained in the statement of loss was $114,803.56. Sentry's representative testified that amount was paid by Sentry. Beauhall testified he received that amount from Sentry. Cancelled checks were introduced amounting to $111,598.56. Cancelled checks for the remaining $3,205 could not *484 be located. However, file copies of checks in that amount issued by Sentry to Beauhall were produced. Based upon this evidence we cannot say the trial court was clearly wrong in rendering judgment in Sentry's favor in the sum of $100,438.70, which is actually less than is due. However, no appeal was taken by plaintiffs, nor was defendants' appeal answered so this amount cannot be adjusted. This assignment has no merit.

DECREE
For the reasons set forth above we affirm the awards of $100,438.70 to Sentry and $10,322.00 to Beauhall, reduced to that amount by 10 percent negligence of Beauhall. We affirm the assessment of damages in this amount against Sears, State Industries and Latil in solido. We affirm the assessment of negligence on the part of Sears at 10 per cent, State Industries at 10 per cent and Latil at 35 per cent reserving to those parties their respective rights of contribution against each other. We affirm the dismissal of the third party demands against the City/Parish. Costs are assessed against Sears, State Industries and Latil.
AFFIRMED.